# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 03-742


**ELIZABETH MONK**

**VERSUS**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**


**\*\*\*\*\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 206,109
HONORABLE DONALD T. JOHNSON, PRESIDING

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**SYLVIA R. COOKS**
**JUDGE**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Glenn B. Gremillion, Judges.


**AFFIRMED.**


Robert Beck, Jr.
P.O. Box 12850
Alexandria, Louisiana 71315
(337) 445-6581
COUNSEL FOR APPELLEE:
    Elizabeth Monk

Bonita Preuett-Armour
P.O. Box 710
Alexandria, Louisiana 71309
(337) 442-6611
COUNSEL FOR APPELLANT:
    State Farm Mutual Automobile Insurance Company

**COOKS, Judge.**

## STATEMENT OF THE CASE

On October 14, 1999, Elizabeth Monk, a dental hygienist, was involved in an automobile accident while riding as a guest passenger in a vehicle driven by her co-worker, Phoebe Alston. Ms. Alston's vehicle was struck by Andrew Gray. Mrs. Monk asserted a claim against Mr. Gray's insurer, Economy Fire and Casualty Insurance Company (Economy), Ms. Alston's uninsured/underinsured motorist carrier, State Farm Mutual Automobile Insurance Company (State Farm), and her own uninsured/underinsured motorist carrier, which is also State Farm. Mrs. Monk settled with Economy for the policy limits of $10,000.00 prior to filing suit.

Prior to trial, State Farm paid Mrs. Monk $10,000.00 under the uninsured/underinsured motorist provision of Ms. Alston's policy and $5,000.00 under the medical payments portion of the Alston policy. Additionally, prior to trial, State Farm paid Mrs. Monk $8,285.00 in medical payments coverage under her own uninsured/underinsured policy.

Trial on the merits was held before the Honorable Donald T. Johnson. The court awarded general and special damages in the amount of $78,285.00 with a credit to State Farm for amounts already received by Mrs. Monk. The judgment cast State Farm for $35,000.00 in "new money." It is from this judgment that State Farm appeals. State Farm contends the trial judge erred in awarding this amount to Mrs. Monk when the evidence establishes Mrs. Monk's complaints were actually caused by prior and subsequent accidents. We disagree. Therefore, for the reasons assigned below, we affirm the decision of the trial court.

## LAW AND DISCUSSION

In order for an appellate court to reverse the trial court within the manifest error standard of review, the appellate court must find that a reasonable factual basis does

not exist for the ruling of the trial court. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Stobart v. State through DOTD,* 617 So.2d 880 (La. 1993). An appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *Lyons v. Bechtel Corporation*, 00-00364 (La.App. 3 Cir. 12/27/00), 788 So.2d 34; *Stobart, supra.* If the trial court's findings are reasonable in light of the record as a whole, an appellate court may not reverse, even though it may have weighed the evidence differently. *Id.*

We conclude a review of the record supports a finding that the injuries complained of by Mrs. Monk were caused by the October 14, 1999 automobile accident and the amount of general damages awarded by the trial court was reasonable and appropriate.

State Farm contends Mrs. Monk's complaints were caused by prior and subsequent accidents. State Farm contends Mrs. Monk has been involved in five automobile accidents, including four in Louisiana and one in New Mexico. Actually, Mrs. Monk testified she was in one prior accident in 1994. She testified all complaints associated with that accident had resolved and she was pain free and had resumed her normal lifestyle for four years prior to the October 14, 1999 accident. State Farm was unable to introduce any medical evidence to refute her testimony on this point.

Following the October 14, 1999 accident, Mrs. Monk had complaints of pain in the right side of her neck, right shoulder and right thigh. She was referred to Dr. Gerald J. Leglue, Jr., a physical medicine and rehabilitation specialist, in Alexandria. Dr. Leglue testified Mrs. Monk complained of pain in her neck, right shoulder and right thigh and also she reported paraesthesias, a numbness or tingling, into her right arm. Upon examination, Dr. Leglue found spasms in the neck and shoulder areas bilaterally and he also noted some decreased sensation in Mrs. Monk's first three fingers and half the ring finger on her right side. With regard to her lower back, Dr.

3

Leglue was of the opinion that Mrs. Monk had injured the piriformis muscle which is the buttock muscle that attaches the sacrum to the hip. Dr. Leglue's initial diagnosis was acute cervical sprain/strain, strained right rotator cuff, and piriformis strain together with an iliolumbar ligament strain. He prescribed physical therapy three times a week for a period of three weeks and scheduled Mrs. Monk for a follow-up evaluation. After completing a course of physical therapy, with no significant pain relief, Dr. Leglue recommended acupuncture treatments in November 1999. Mrs. Monk persisted with complaints of shoulder girdle pain on the right side with symptoms into the right arm, hand and fingers. Dr. Leglue ordered an EMG nerve conduction study of the right arm and an MRI.

An MRI performed on April 30, 2001 showed bulging discs at C3-4 and C5-6 with foraminal narrowing on the right side. The MRI further showed some "small bone spurs" that were beginning to develop in those areas. Dr. Leglue opined the bone spurs were contributing to Mrs. Monk's symptoms. He further opined while the bone spurs were not caused by the October 14, 1999 accident, the accident caused them to become symptomatic. With regard to the bulging discs at C3-4 and C5-6, Dr. Leglue testified it would be reasonable to assume the bulging discs were caused by the accident.

State Farm contends the injuries suffered by Mrs. Monk were, at best, aggravations of pre-existing injuries she sustained in subsequent accidents or aggravations of bone spurs that existed before October 14, 1999. The evidence does not support this contention. Mrs. Monk testified she had fully recovered from the 1994 accident. While she was involved in an accident on June 30, 2000, the evidence indicates she suffered no injuries. Mrs. Monk also described an accident in March 2002 which did cause her injury. However, prior to the March accident, her condition had become stable; Dr. Leglue testified she had reached maximum medical

4

improvement, but her condition was far from "normal" and she was still experiencing substantial pain.

In awarding damages, the trial court considered only the time up to the March 2002 accident. The trial court stated:

> Dr. Leglue agreed that up until March of 2002, her condition was stable; she had gotten some transient relief from the various things they had tried, but that her condition was basically chronic. Dr. Leglue had attempted to manage her symptoms with various forms of conservative treatment, including medications, steroids, cervical traction, acupuncture, and physical therapy. As of December of 2001, his plan was to see Ms. Monk as needed, and that was the last time he officially saw her regarding this accident.

Appellate review of a damage award was set forth in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), in which the Louisiana Supreme Court stated:

> [T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.

*Id*. at 1260-61.

The record indicates Mrs. Monk is a dental hygienist who has worked in that capacity for the past twenty years. Other than very temporary relief following the acupuncture sessions, Mrs. Monk has continued to experience pain in varying degrees on a daily basis since the October 1999 accident. Prior to the March 2002 accident, Dr. Leglue testified she had reached maximum medical improvement and it was not anticipated that her condition would significantly improve. We find the trial court was within its discretion in awarding the sum of $68,750.00 in general damages for the injuries sustained in the October 1999 accident.

Mrs. Monks filed a Motion to Dismiss the Suspensive Appeal of State Farm. Mrs. Monk contends State Farm failed to provide security within the delays allowed

by law. A review of the record indicates the trial court failed to designate an amount of security. State Farm made an estimation and posted an appeal bond in the amount of $39,000.00 on June 23, 2003. On the same date, the trial judge was notified of the posting of an appeal bond. Louisiana Code of Civil Procedure article 2161 provides an "appeal shall not be dismissed because of any . . . irregularity, error or defect unless it is imputable to the appellant." We decline to dismiss the suspensive appeal of State Farm based on the failure of the trial judge to set an amount for the appeal bond.

## DECREE

Based on the foregoing review of the record, we affirm the decision of the trial court. All costs of this appeal are assessed to State Farm.

**AFFIRMED.**